Dylan M. McFarland
McFarland Molloy & Duerk
283 W. Front St., Ste. 203
Missoula, MT 59802
Phone: (406) 519-3122
Fax: (406) 519-3123
mcfarland@missoulalawyers.com

*Attorney for Defendant Gabriel Michael Boe*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GABRIEL MICHAEL BOE,<br><br>Defendant. | **CR 24-01-BU-DLC**<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW, Defendant, Gabriel Michael Boe, and respectfully submits his sentencing memorandum.

## Introduction

At the forefront, Mr. Boe and counsel share their appreciation in recognizing the Government for exercising its discretion in this matter. Without it, Mr. Boe

1

would have been forced into trial in a matter containing a number of what can best be described as "bad facts," a mandatory minimum custodial sentence of ten years, and a statistical likelihood of conviction. A sentence at the low end of the guidelines, as requested by the Government, is not unreasonable and if that is the outcome, Mr. Boe continues to share his gratitude with the Court, United States Probation, and the Government, as the alternative would have been an injustice.

However, in this matter and given a totality of the circumstances, a sentence of time served (318 days) or twelve months and a day, combined with three years of supervised release and conditions imposed requiring drug addiction and mental health treatment constitutes a sentence that is sufficient but not greater than necessary.

### Procedural Background

On January 18, 2024, a Grand Jury for the District of Montana handed down a three-count Indictment charging Jason Michael Hoover and Gabriel Michael Boe with Count 1: Conspiracy to Possess with the Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846, and Count 2: Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C § 841(a)(1).  PSR ¶ 1, Doc. 1.  Both Counts of the Indictment carry a mandatory minimum sentence of 10 years to life imprisonment, $10,000,000 fine, and at least five years of supervised release.  *Id.*

Co-defendant Hoover was also charged with Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  *Id.*

On January 24, 2024, Mr. Boe was arrested in Spokane, Washington and made his Initial Appearance before United States Magistrate Judge James A. Goeke on January 25, 2024.  PSR ¶ 3.  Mr. Boe was released with conditions pending his appearance in Montana.  *Id.*

On February 7, 2024, Mr. Boe failed to appear for his initial appearance in Montana, and an arrest warrant was issued by United States Magistrate Judge Kathleen L. DeSoto.  *Id.* at ¶ 5.  On May 8, 2024, Mr. Boe was again arrested in Spokane, Washington and detained pending his appearance in Montana.  *Id.* at ¶ 7. On June 20, 2024, Mr. Boe appeared in front of Judge DeSoto, entered pleas of not guilty to Count I and Count II, admitted to the forfeiture allegation, and has remained detained since that time (318 days total).  *Id.* at ¶ 8, pg. 1.

United States Probation determined Mr. Boe's base offense level to be 14, consistent with USSG §2K2.1(a)(6).  *Id.* at ¶ 31.  Mr. Boe received a two-point enhancement under USSG §2K2.1(b)(1)(A) as he sold Mr. Hoover three firearms. *Id.* at ¶ 32.  Mr. Boe received another two-point enhancement pursuant to USSG §2K2.1(b)(5)(B)(I) as Mr. Hoover was a prohibited person as defined by § 922(g). Mr. Boe received a third two-point enhancement for obstruction of justice as he did

3

not appear on his own volition in Montana at the time of his initial appearance.  After the enhancements, Mr. Boe's adjusted offense level was 20.

Mr. Boe received a three-level reduction for acceptance of responsibility under USSG §3E1.1(a) and (b).  Although he has zero criminal history points and no prior arrests, Mr. Boe does not qualify for safety valve eligibility as the sale of a firearm necessarily requires one to possess a firearm.  18 U.S.C. § 3553(f)(3).  United States Probation calculates Mr. Boe's total offense level as 17.

Mr. Boe does not have any criminal history, convictions, or arrests, other than related to the instant offense.  *Id.* at ¶¶ 43-49.  His criminal history category is I.

With a total offense level of 17 and a criminal history category of I, Mr. Boe's recommended guideline range is 24 to 30 months.  *Id.* at ¶74.

### Objection to Presentence Report

Mr. Boe has a single objection to Presentence Report.  Paragraph 33 of the Presentence Report provides a two-level enhancement pursuant to USSG §2K2.1(b)(5)(B).  Mr. Boe asserts that the application of the two-level enhancement constitutes "double counting" under the Guidelines and should be excluded from his recommended guideline calculation.

"Impermissible double counting occurs when a court applies an enhancement for a necessary element of the underlying conviction." *United States v. Hornbuckle*, 784 F.3d 549, 553 (9th Cir. 2015), *citing United States v. Smith*, 719 F.3d 1120,

1123-25 (9th Cir. 2013).  "Impermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007), (citing *United States v. Nagra*, 147 F.3d 875, 883 (9th Cir. 1998).  However, "[d]ouble counting is not always impermissible; it is sometimes authorized and intended by the Sentencing Guidelines when each invocation of the behavior serves a unique purpose under the Guidelines." *Id.* (citing *United States v. Syrax*, 235 F.3d 422, 428 (9th Cir. 2000).

Here, Mr. Boe plead guilty to the Sale or Transfer of Firearms to a Prohibited Person, a violation of 18 U.S.C. § 922(d).  Doc. 69.  Section 922(d) probits the sale of any firearm to an unlawful user or addict of any controlled substance.  The statute states:

> It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile, is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

18 U.S.C. § 922(d)(3)[1]

---

[1] 922(d) contains eleven (11) separate prohibitions to the purchaser of a firearm, none of which are applicable here with the exception of subpart (3).

As set forth in the Offer of Proof, in pleading guilty to the superseding information, the defendant acknowledges that:

> First, the defendant knowingly sold or otherwise disposed of firearms to Jason Hoover;
>
> Second, Jason Hoover, who at the time was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802; and
>
> Third, the defendant, at the time of the sale or disposition, knew or had reasonable cause to believe that Jason Hoover was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802.

Offer of Proof, Doc. 75.

United States Probation calculated Mr. Boe's base offense level as 14, pursuant to USSG §2K2.1(a)(6). USSG §2K2.2(a)(6) sets the offense level at 14 if, the defendant (A) was a prohibited person at the time the defendant committed the instant offense; (B) is convicted under 18 U.S.C. § 922(d), § 932, or § 933; or (C) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person. But for Mr. Boe's conviction under 18 U.S.C. § 922(d), his base offense level would be 12. *See* USSG §2K2.1(a)(7).

Mr. Boe received a two-level enhancement to his base offense level (beginning at 14 rather than 12) because he was convicted under 18 U.S.C. § 922(d). Mr. Boe was convicted under § 922(d) because it was determined, correctly, that Mr.

Boe had reasonable cause to believe that Mr. Hoover is/was an unlawful user of or addicted to a controlled substance and, knowing that, Mr. Boe sold Mr. Hoover a firearm, a violation of 18 U.S.C. §922(d)(3).

Mr. Boe then receives an additional two-level enhancement under USSG §2K2.1(b)(5)(B) because he, "transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who was a prohibited person." USSG §2K2.1(b)(5)(B)(I).

"For purposes of subsections (a)(4)(B), (a)(6), and (b)(5), "prohibited person" means any person described in 18 U.S.C. § 922(g) or § 922(n).  USSG §2K2.1, Commentary, n. 3.  Here, the only applicable person described under § 922(g) or (n) that applies to the facts in this case is Mr. Hoover, a person who "is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."  18 U.S.C. § 922(g)(3).

The language used in 18 U.S.C. § 922(d)(3), which garners Mr. Boe a two-level increase in his base offense level (increasing the base offense level from 12 to 14) uses *the exact same language*, making it illegal to sell a firearm to a person who, "is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).  18 U.S.C. § 922(d)(3).



As described in *Holt,* double counting occurs, "when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *Holt*, 510 F.3d at 1011.  The Ninth Circuit has drawn a firm distinction in what constitutes double counting and what is permissible under the guidelines. Specifically, where the enhancements applied by the district court accounted for distinct characteristics and wrongs associated with the crime, the Court did not find double counting to have occurred.  *See United States v. Laurienti,* 611 F.3d 530, 555 (9th Cir. 2010) (holding that because the base offense level did not "necessarily include" the conduct for which defendant received an enhancement, there was no impermissible double counting). *United States v. Wright*, 373 F.3d at 943-44 (holding that the district court's application of both the enhancement for children under twelve and the enhancement for vulnerable victim did not constitute improper double counting); *United States v. Holt*, 510 F.3d at 1011–1012 (holding sadistic conduct and vulnerable victim enhancements account for distinct characteristics of

the crime); *United States v. Smith*, 719 F.3d at 1125 (holding "undue influence" and "force, fraud, or coercion," serve unique purposes under the guidelines.)

Here, the base offense level necessarily includes the conduct for which Mr. Boe received an additional enhancement under USSG §2K2.1(b)(5)(B)(1). There is no distinction between either the characteristics or the wrongs associated with Mr. Boe's offense, which is that the receiver of the firearm Mr. Boe sold is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) and that Mr. Boe had knowledge of that fact. This is fully contemplated in USSG §2K2.1(a)(6), where the base offense level enhancement set two levels higher than the floor was a direct result of Mr. Boe's conviction under § 922(d)(3), for knowingly selling a firearm to Mr. Hoover, a person he knew to be an unlawful user and/or addict of methamphetamine, a controlled substance.

The same set of circumstances that forms the elements of Mr. Boe's conviction under 922(d)(3), by definition, also makes Mr. Hoover a "prohibited person" under § 922(g)(3). This likewise garners Mr. Boe an additional two-level enhancement to his base offense level for the exact same harm – selling a firearm to a person who is an unlawful user of or addicted to any controlled substance. This is the definition of double counting and the additional two-point enhancement under §2K2.1(b)(5)(B)(I) should be excluded.

Without the double counting that arises in this specific instance, Mr. Boe's base offense level is 15 and his recommended guideline range is 18 to 24 months.

**Sentencing Factors**

**1.     The History and Characteristics of Mr. Boe**

Mr. Boe grew up in Southwest Montana.  He was involved in athletics (baseball, football, rodeo, track), earned good grades, graduated high school and went to work.  Mr. Boe's work history is impressive.  He worked consistently since before he graduated high school until early 2023, just prior to the conduct that forms the basis for his arrest and conviction in this matter.  *Id.* at ¶¶ 57, 67-69.  He worked in the oil fields from 2010 to 2018, working two weeks on and one week off.  On his off week he would return to Twin Bridges and continue to work at the Ice Factory, a business that he worked for consistently from 2003 through 2023, and then return to the oil fields.

Mr. Boe does not have any criminal history, convictions, arrests, or run-ins with law enforcement.  *Id.* at ¶¶ 43-49.  His only interaction with law enforcement occurred on March 10, 2016, when Child Protective Services came to the house of his sister, Kortnie Craddock, to perform an investigation.  In that investigation, law enforcement located items indicative of drug use, pills, and paraphernalia.  Mr. Boe's sisters, Kortnie and Megan were both heavy drug users and addicts, but that was not anything Mr. Boe engaged in at that time, other than occasional marijuana use.

On February 14, 2022, Valentine's Day, Mr. Boe went to his sister Kortnie's house as he had received some concerning text messages from her, and she had exhibited mental health issues in the past. When he entered her home, he found she had shot herself, although she was not deceased. Knowing she was not going to make it, Mr. Boe called 9-1-1, and for the next 30 minutes engaged in CPR until the first responders arrived from Dillon, where she was pronounced dead at the scene, leaving behind her husband and three children.

Mr. Boe did not take the loss well. He had previously lost his mother in 2013, and his dad and sisters were all the family he had. As indicated by the lack of letters supporting Mr. Boe, he does not have a large social network. He keeps to himself, and family is important.

Mr. Boe experienced PTSD and depression associated with the event. A family member, his aunt, brought Mr. Boe to Dr. Reiff, a family practice doctor in Whitehall, Montana. Dr. Reiff prescribed Mr. Boe Wellbutrin to treat his conditions, although Mr. Boe did not like the way the drugs made him feel and did not feel like they were treating his condition. *Id.* at ¶ 60. Mr. Boe stopped taking the medication shortly after trying it.

Mr. Boe, then, for the first time, turned to heavy narcotics, beginning his use of fentanyl and methamphetamine in 2022. Drug use provided him an escape, while at the same time provided a connection, however unhealthy it was, to his younger

sister Megan.  He started using fentanyl in small amounts, eventually progressing to 20 pills per day.  *Id.* at ¶ 63.  When he could not get fentanyl and would get "drug sick," he would use methamphetamine, although it was not his preferred drug. Fentanyl was always the preferred drug.

In August 2022, Mr. Boe was involved in a motor-vehicle accident after colliding with a semi-truck stopped in his lane of travel.  His vehicle ignited, causing burns to his leg and treatment at the hospital.  *Id.* at ¶ 57.  A urine sample indicated positive screening for marijuana and amphetamines.  Mr. Boe was working at the time of the incident.

After that time, Mr. Boe decreased his work, eventually quitting his job of 20 years to pursue his full-time use of drugs.  To fund his addiction, Mr. Boe sold most or all of his personal possessions, including firearms which he had purchased and collected over a number of years, to individuals and pawn shops.  Three of the firearms he sold were to Co-defendant Hoover, who was married to Mr. Boe's cousin. Mr. Boe sold firearms to Mr. Hoover simply because he "paid a fair price."

After the incident causing rise to the instant conviction, Mr. Boe moved with his sister, Megan, to Spokane because fentanyl is much more affordable, and he could continue to help his sister out and keep an eye on her.  Mr. Boe and his sister became homeless after his vehicle was impounded in early 2023.  Mr. Boe remained homeless up until the time of his arrest.

Mr. Boe does not deny that he failed to appear as instructed by the Court.  Mr. Boe believes it is important for the Court to know that law enforcement found him on the same street corner where he was initially arrested and that he volunteered to law enforcement that he had an outstanding warrant at the time.  He was tired of being homeless, tired of being an addict, tired of being drug sick, and tired of his life at that time.  When he volunteered that information, he knew it would be a needed change for him, whatever that may be.

### 2.    The Nature and Circumstances of the Offense

On the morning of February 9, 2023, law enforcement executed a search warrant on the home of Co-defendant Hoover as Mr. Hoover was identified as the suspect of a number of thefts in Gallatin County. *Id.* ¶¶ 17-24.  In executing a search of the premises, law enforcement found approximately 50 firearms, recreational equipment and vehicles, various power tools and other items, enough to fill a shipping container.

In addition to the various stolen items located and recovered, law enforcement also found Mr. Boe and Co-Defendant Hoover hiding in a laundry room, with a loaded .45-70 lever action rifle in close proximity to them and a plastic baggy on the floor of the room containing methamphetamine.  Upon his arrest, Mr. Hoover casually stated to law enforcement that Mr. Boe had brought a backpack into the

house and left it in the bathroom, but the Mr. Hoover did not know what was in the backpack.

What was in the backpack was 50 grams of heroin, 1293.6 grams of methamphetamine, and a .40 caliber Smith & Wesson pistol, registered to Mr. Boe. This, combined with Mr. Boe's presence (hiding) in the residence at the time of the search, and a small amount of methamphetamine found in his truck located outside the home are what are commonly referred to as "bad facts."

Mr. Boe had sold the pistol to Mr. Hoover approximately two months prior to the search, along with two other firearms that were also located in the trailer with the other stolen property. As noted in the PSR, there does not appear to be evidence that Boe was aware of Hoover's additional unlawful activity, which included the currency of firearms for methamphetamine in multiple pound quantities. There is no evidence that Mr. Boe ever sold drugs, no 302s or assertions from other drug users that he sold drugs to them or was known to sell, possess, or obtain any quantity of controlled substances. But the facts above are bad, and we again express appreciation to the Government for its discretion in this matter.

**3.    The Need to Provide Mr. Boe with Correctional Treatment in the Most Effective Manner**.

What appears to be clear in Mr. Boe's case is that his drug addiction/use that delivered him to his current situation derives from the triggering event associated with his sister's death. Mr. Boe needs, at a minimum, treatment for his fentanyl

14

addiction, treatment that is not available in the Bureau of Prisons as any custodial sentence will not be long enough to avail him to the RDAP program.  Additionally, it is likely a certainty that Mr. Boe will need some mental health management in combination with treatment, as triggers or potential triggers in his life will continue to arise.

As it stands, Mr. Boe is sitting doing his time.  Although he is not using, he is not receiving any treatment or tools to confront issues that will arise at whatever point he is released.  Requiring, as a condition of supervision, that Mr. Boe become involved in treatment consistent with that recommended by medical professionals is appropriate and there is no reason to delay that need.  Mr. Boe can sit for another 12 months and go to treatment, or he can go now.  Logically, exposing him to treatment and counseling sooner than later would appear to be the best course for a successful long-term outcome in this case.

### 4.    Other Policy Considerations

The undersigned has a difficult time understanding why Mr. Boe was released pre-trial.  He was homeless.  He had no job.  He had no family support or ties to Washington.  He had no vehicle, as it was impounded, and no way to recover the vehicle as he had no money and no job.  Law enforcement confiscated his license when he was arrested.  He was using/addicted to fentanyl.  He was charged with a drug crime carrying a mandatory minimum sentence of ten years.

Although he was not a danger to the community, that is about the only thing you can say in favor of his release.

There is no question the two-point enhancement under USSG §3C1.1 applies as his failure to appear was "willful" to the extent his circumstances provided him a choice. To the extent he was advised that a failure to appear in Montana would result in a two-level enhancement was provided, his ability to understand that directive and what that meant practically to an ultimate sentence is questionable. Without that two-level enhancement, which was a near guarantee on his release in Washington, Mr. Boe would have a recommended guideline range of 12-18 months (assuming his objection is correct).

### Recommendations

### 1.    Sentencing

Mr. Boe requests a sentence of time served or in the alternative a year and a day, with the maximum term of supervised release of three years.

Counsel has been in contact with Mr. Boe's father, Marc Boe, who lives part time in Twin Bridges and part time in the Philippines (winter months). He has indicated that he is willing to allow Mr. Boe to live at his property at 12 Boe Lane, Twin Bridges, Montana 59754. Mr. Boe communicates via Facebook, his communications are as follows:

12:04   🔕 📶 89%▮

← Marc 📞 📹 ⓘ

Hi Marc, I'm attorney Dylan McFarland's legal assistant. He asked me to reach out to you. We represent your son, Gabe, in the matter of USA v. Gabriel Michael Boe. Gabe's sentencing hearing is set for March 19, 2025 at 9 am. Dylan wanted me to ask you if Gabe can live at your house in Twin Bridges if he were to be released after being sentenced? Please let me know. Also, you can call us at (406) 519-3122. We hope to hear from you soon.

You can now message and call each other and see info like active status and when you have read messages.

 Yes, that would be ok ,I will be back from the Philippines around the middle of march

MON AT 4:23 PM

Great! Thanks for getting back to me. I will let Dylan know.

 Yes, your welcome, glad to hear that this is gonna be resolved, Gabe is a good person just stumbled a little, he will get going again

17

Mr. Boe has demonstrated a long and established ability to work and provide for himself.  It is anticipated that he would continue to pursue work in the Twin Bridges / Dillon area if he were allowed to be released.

Mr. Boe has no criminal history prior to this instant event, and he is not a risk to the community.  Mr. Boe does have charges pending in Madison County, Montana.  Counsel has discussed those pending charges with the Madison County Attorney who continues to monitor the matter, and it is expected that those charges will be dismissed following Mr. Boe's sentencing.

Mr. Boe has expressed an interest in treatment both for his substance abuse and mental health.  PSR at ¶¶ 60, 64.  He would ask that whatever the Court's sentence is, that he receive assistance in finding and pursuing both mental health and substance abuse treatment upon release.

**2.    Confinement**

Should Mr. Boe be sentenced to a term of custody, he respectfully requests the following:

**a.    Treatment**

As discussed above, Mr. Boe is open to treatment for both his mental health and substance abuse issues and would appreciate the Court's recommendation for any programming available through the Bureau of Prisons.

**b.    Placement**

Mr. Boe requests a recommendation by the Court to be placed at FCI Sheridan. Sheridan, Oregon is the closest facility to his father and would increase the likelihood of visitation.

### c.      Time to Run Concurrent with State time

Mr. Boe requests that any time he receives be run concurrent with his pending matter in Madison County, DC-29-2023-05.

### Conclusion

Mr. Boe is open to any sentence that provides for treatment.  He has no objection to supervision, however that looks and in whichever form, and for as long as the Court determines is reasonable.

Respectfully submitted this 5th day of March, 2025.

MCFARLAND MOLLOY & DUERK


By:  __/s/ Dylan M. McFarland_____
        Dylan M. McFarland
        Attorney for Gabriel Michael Boe

<u>CERTIFICATE OF SERVICE</u>

L.R. 5.2(b)

I, Dylan M. McFarland, attorney for Defendant, Gabriel Michael Boe, hereby certify that a copy of the foregoing document was served on these persons by the following means:

   1,2,   CM/ECF

           Hand Delivery

           Mail

           Overnight Delivery Service

           Fax

           Email

1.      Clerk, U.S. District Court

2.      Jennifer S. Clark
          Assistant U.S. Attorney
          U.S. Attorney's Office
          P.O. Box 8329
          101 East Front Street, Suite 401
          Missoula, MT  59807
          jennifer.Clark2@usdoj.gov

By:   */s/ Dylan M. McFarland*
       Dylan M. McFarland
       Attorney for Gabriel Michael Boe

20